Thank you. Good morning. May it please the Court. My name is Paul Spruan, Assistant Attorney General for the Navajo Nation Department of Justice. I'd like to reserve three minutes for rebuttal. Your Honors, the District Court erred in this case because the Navajo Nation's jurisdiction is plausible or colorable, at the very least, and exhaustion was required. Put another way, the Navajo Nation's jurisdiction is not frivolous or obviously invalid under clearly established law. Now, there's a lot of issues involved in this case, but I'd like to focus on two of them today. The first is there are several unresolved factual issues. We believe the Navajo Nation Labor Commission, as the appropriate tribal tribunal, needs to decide before this case can be before a federal court. And two, that the leases involved are consensual relationships under Montana's first exception, even assuming that rule and the exceptions would apply. Could I stop you and ask about, are you familiar with the Eighth Circuit cases issued last May? The Fort Yates and the Belcourt cases, yes ma'am. Right. Are you asking, wouldn't we have to create a circuit split to rule the way you want us to rule? I think those cases are distinguishable on the facts, were the facts to be available fully in this case. That dealt with North Dakota. North Dakota has very specific law in their state statutes that say a school district cannot expand the jurisdiction of a tribe or, we interpret, cannot consent to tribal jurisdiction. The school districts here have stated no such Arizona law. We don't believe such a law applies. Also, unlike in this case, these weren't leases. These were some sort of joint power agreements. It's unclear what the status of the land actually was in those cases in North Dakota. But the leases in this case aren't really at issue. These are employment agreements, right? I believe the leases are at issue because of Marion v. Hickory Apache and other cases that talk about whether a lease is a consent to tribal jurisdiction. Particularly in this case, the Windrock Unified School District affirmatively consented to, quote, all laws of the Navajo Nation. So in that case, whether the nation can regulate employment activities, we believe, is in the leases as a consent, assuming that were necessary. I have a question, though, in terms of, that I'm just wondering, could they, on the sovereignty to exclude, on that, after, if, given Congress's command in Arizona's Enabling Act that Arizona will establish and maintain a system of public schools over which Arizona will maintain exclusive control, hasn't Congress already said that the right of the Navajo Nation to exclude and make its own laws must accommodate Arizona's interest in controlling Arizona's public schools? I think it's the other way around. I think this mandate has to accommodate the preexisting right to exclude in the treaty, and also the other provision, the disclaimer clause, in the same document. Two subsections up from this discussion of how public schools is a very clear, broad disclaimer on the ability of Arizona to affect Indian lands. We think that's... Well, since you have the State having to educate, that's clear. They have to educate these kids. If the nation says you can't have a school on the reservation, can the nation do that? I think they can say that you can't locate it on tribal trust lands within the nation. There's fee land within the nation, Cameron Trading Post, which is the subject of the Atkinson case. If they wanted to locate on a fee parcel, they could do that. An allotment, of which there are many on the Navajo Nation, that might be another situation. The nation itself doesn't have a right to exclude off of allotments. Or there are other ways that the state, meaning the state of Arizona, as opposed to these school districts, could accommodate the nation's views on whether they can utilize tribal trust land. And that is what happened here. There was a negotiation in the lease for Winderock, specifically, as to the allocation of authority on consideration of using tribal trust lands. So it cannot be, as the district court found, that they can never consent. They, in fact, did. And that they can never be excluded. They, in fact, can, under federal regulations, the treaty, the disclaimer clause, and the very lease, as the school district signed. And so there has to be an accommodation between this mandate to provide education by the state and how these school districts utilize tribal trust land. We think that means a negotiation with a lease, which is a consensual relationship, to decide the allocation of that authority. Specifically for Winderock, they consented to the authority of the Navajo Nation. Now they're saying, no, that doesn't really apply for a number of reasons. But we don't think this broad categorical rule the district court asserted actually exists. In practice, it didn't here. Well, now, do you agree that you're bound by Waterwheel? I think Waterwheel is one way of viewing the case. And in that case, it was a federal common law. Well, since I happened to be on it, and then I was on the one after it. Yes, ma'am. You were on the Grand Canyon Skyward case as well. Yeah, all of those. So I'm just wondering, you know, I've said it several times now. So if you don't think we're bound by it, you know. I think it's distinguishable because it wasn't talking about a treaty right to exclude. It was talking about a federal common law right. But I think Waterwheel helps us in the sense that there was a right to exclude with a very specific exception arising from Nevada v. Hicks, the specific circumstances of that case. Law enforcement investigating an off-reservation crime on a non-treaty reservation pursuant to a search warrant. Semi-permanent use of tribal trust land in a lease, we believe, is very different. But wait, I'm a little bit confused. Because I thought you would say we are absolutely bound by Waterwheel. Waterwheel tells us Montana doesn't apply at all. And even if it does, there's a Montana exception that applies. So I'm a little bit confused by your answer just now that you would distinguish Waterwheel. Can you just explain a little bit why you're saying that? Yes, ma'am. Depending on how you view this competing state interest, right. Okay. So if the competing state interests are the exact facts of Nevada v. Hicks, yes, Waterwheel applies in this case. But Waterwheel applying means we have the you, there may be tribal jurisdiction, right? It means we have the right to exclude and the right to require conformance to tribal law. Waterwheel is good for you. Right. Right. So you're saying it in a funny way. It sounds like you're saying Waterwheel doesn't apply, but I'm just a little confused about what you're saying about Waterwheel. I think Waterwheel applies, and I think the competing state interest is a narrow exception because of the facts of Hicks. And you're not distinguishing those cases, Waterwheel or the Skywalk case, because it just seems to me a very qualitatively different relationship in those cases when an entity enters into an economic relationship, an entrepreneurial relationship. And what you have here, of course, is this is a government-to-government situation. Well, it's unclear if it's a government-to-government. Well, it's a school district council. It is a very different animal than an amusement park. Oh, that's true. It's different than building a Skywalk. And the treaty does speak specifically about the state needing to come in as agents of the federal government and educate the children. So it would be helpful to me at least if you could address why that doesn't matter to your analysis. Sure. The facts of Waterwheel and Grand Canyon Skywalk were private actors. And there was a discussion about Nevada v. Hicks, which even the U.S. Supreme Court in Nevada v. Hicks said is restricted to its facts about this particular situation. Right. So if that's true, there's nothing that this court has said to say, oh, but not for state school districts. One of the facts that has not been established here is what exactly the status of these state school districts are. The state of Arizona has a mandate to provide education, but the answering brief of the school district sort of says several different things about who we actually are. We're not the state. That's not what we're saying, but we like these cases about actual state actors. We're non-sovereign, so don't say that we're a sovereign because we're just following state law. Those are one of the things that how it intersects with Waterwheel, how it intersects with a number of other cases has not been resolved. And we think the Labor Commission has the right to determine that, and it should be determined before we can talk about is this a state actor, is it not, and those sort of things. That's the factual discovery that needs to be conducted? We think those are factual findings that need to be determined by the tribal court in the first instance, whether it's subject to discovery or whether it's subject to a factual submission by the parties. It's something that has not been determined. If you look at the court ---- It's very legal, though. It seems like something that is a legal question more than a factual question, but are you saying there are factual questions that need to be determined to answer that legal question? We've certainly argued that, counsel. Yeah. I think there are questions about the historical relationship of these school districts, these particular school districts on the Navajo Nation, who they're made up by, who makes the governing decisions. We think they're all Navajos in all of these instances. How they got onto the reservation versus what they're doing now may be very different. I think this gets to the question I wanted to ask earlier. Could under the State obligation to provide public schools, could the State provide the public education by on the Navajo reservation asking the Navajos to run public schools essentially on the reservation? I mean, it's not clear to me that this idea that the State has to provide public education means it has to be a State school for every Navajo kid. No, I agree. I agree. And that's what's unclear as to there are many other possibilities. There could be funding agreements wherein a certain amount of State funding under the funding that the State actually gives. Districts actually have some autonomy in generating funds. Do you know if that happens? I mean, are there instances where essentially the State funding is going to a tribal school, essentially a tribal-run public school? I'm not aware of that. The Navajo Nation has Head Start programs in colleges and a certain number of other schools, but most of the other schools are Federal schools which receive direct Federal funding through 638 and tribal. But the Federal schools then are not State schools, so there are some kind of other kind of public school that's going on? Absolutely. Yeah, there are a couple of private schools, St. Michael's Indian School in St. Michael's, Arizona. That's a private Catholic school. So there are a number of different ways that education is being provided on the Navajo Nation other than through this mandate by the State of Arizona. And are kids on the border sometimes taking buses off the reservation for schools? And that's another way the State could fulfill this mandate in the Enabling Act is to provide busing into Holbrook, Flagstaff, wherever it may be. Counsel, you haven't addressed the State's other competing interests, which is the interest in finality and enforcing its own judgments. And as we discussed in the reply brief, there's res judicata and other prudential sort of preclusion doctrines that apply here. And as we showed, there's a Navajo Nation Supreme Court case that actually applied preclusion to an arbitration done under a collective bargaining agreement. We believe in finality as well. It's under Navajo law that is a very important principle that you don't keep bringing things up. So as we discussed with the Kramer case in the U.S. Supreme Court where that is reconciling between state adjudications and federal adjudications on civil rights, we have the same thing. And those are issues that should be brought up on the merits before the Labor Commission and the Navajo Supreme Court, not something that negates our jurisdiction here. Well, the U.S. Supreme Court could say at some point that the State's competing interest is so great that the Navajos would never have jurisdiction, but they haven't done it yet, right? That's possible. We think it would be very difficult because of the treaty right to exclude, but it's possible. So is your best argument that you believe this case is governed by National Farmer Union Insurance Company when that case the Supreme Court held that the tribal courts had a plausible claim to jurisdiction over a suit filed against a school district that operated a school within the reservation? And it didn't even say plausible. Was that a yes? It was the answer to Judge Callahan's question, yes. Well, it's a yes, except they didn't use the word plausible. They said the tribal court absolutely has the first right to decide whether, in fact, there's jurisdiction over this school district. But it's easier to—the plausible is a much lower standard than the tribal court actually having jurisdiction. Oh, absolutely. Absolutely. And we think it should be interpreted in light of the Eighth Circuit, which changes the presumption as to who has to show that, in fact, this plainly lacking exception actually applies. My rebuttal time is rapidly waning. Can I reserve the rest of my time for rebuttals? Okay. You can reserve it. Thank you. Good morning. Good morning, Your Honors. I'm Eileen Gilbride. I'm here for the plaintiff's school districts. First, we have to keep in mind that there is a presumption against tribal jurisdiction over nonmembers. That's the Montana presumption. The first and most important characteristic we look at for this analysis is who is the defendant that the Navajos are— But in Waterwheel, I mean, you may have an argument that that's what Hicks sounds like, but in Waterwheel, this Court said this is not tribal land. I mean, this is tribal land, and Montana does not apply. Right. And Straight talks about — Straight at the Supreme Court talks about this is not tribal land because of the lease, and that is why Montana applies. So how do you respond to that? Well, Nevada v. Hicks said the quality of the land, the land is— But Waterwheel is after Hicks. So we have to be bound by Waterwheel, right? And the whole first half of Waterwheel is about how Montana doesn't apply. I agree that this Court said that, and I think it conflicts with Nevada v. Hicks, but let's go to Waterwheel, because I heard— Well, but — okay. But Waterwheel was first, and then you have the Grand Canyon, and Cert was denied on the Grand Canyon, so we're kind of stuck with it. Well, that's fine, because we're talking about private entities there that are using Navajo land for their own benefit. Well, in Waterwheel, we distinguish Nevada v. Hicks on the basis that there was no sufficient competing state interests at play. So I guess, is it your position that Hicks applies to this case, and thus the Navajo Nation does not have adjudicative jurisdiction under its authority to exclude because there are competing state interests at play? Absolutely. What are they? Absolutely. What are they? The Federal Enabling Act requires us to provide a general and uniform public school system for all Arizonans, including the children on the reservation. But does it require it on their reservation? It is, because if we make— The Enabling Act doesn't say that, right? It doesn't. Because in the Enabling Act, Arizona wasn't even around, right? Right. Exactly. But there is a case, and I'm sorry I can't remember the name of it now, where the Navajos sued because the school district was so far off the reservation that the children had to be bused so long. That's not a general and uniform— But he was saying there is land within the reservation that isn't Indian land. There's other non-Indian fee land. Are you saying that the Enabling Act allows you to just take over Indian land and put the school there without a lease? Is that your position? I'm not saying that. And so if you're not saying that, then don't they have the right to exclude the school from Indian land? I don't think they do have the right to exclude. Why not? I mean, if they could—if you're not willing to say that they could put the school on Indian land without an agreement from the tribe, then aren't you—I mean, if you're conceding they can't do that, then aren't you saying they have the right to exclude? No, I'm not. Why not? Because they have to—we have to provide a public education on the reservation. We can't— Right. So maybe you have an obligation to pay enough to get some of the non-Indian land in the reservation. And maybe if that's what they want, I suppose we can. I don't know where Cameron is as opposed to Tinley and whether it's even possible. I mean, that still might violate our constitutional—our constitutional obligation to provide a general and uniform public school. So, I mean— But, I mean, you enter leases here. So isn't entering the lease basically some sort of sign that you needed a lease? They couldn't—you couldn't just take the land right then without—I mean, it was Indian land. You had to—you're paying rent through this lease. It's still Indian land. Do you agree it's still Indian land despite the lease? It is Indian land. We are on leased Indian land. I don't know that we're paying rent. There may be Navajo law that says we don't need to. But I'm not positive about that. But it is leased land. I don't know whether we could, you know, take the land if they don't want us to be there. I still think we have to be there constitutionally. Well, okay, but how can we say that Congress intended for Arizona to have exclusive control over public schools on Navajo land when the Enabling Act doesn't clearly or plainly say so? Because the Enabling Act requires us to have uniform—general and uniform public school for everybody, the same as everybody else. We can't treat them differently. I mean, you have an argument, right? You have an argument that we have to be there, so maybe if they didn't let us be there, we could take the land somehow. That's an argument. But all we're trying to decide here is whether jurisdiction is plausible. So maybe you'll ultimately win. And you'll convince us that, no, this State interest is so strong that we — the tribe doesn't have jurisdiction. But at this point, it just has to be plausible that your argument isn't good enough. And how is — how can you say the Enabling Act is so clear that it's absolutely impossible, that you wouldn't have to ask for permission to be on the land? Because it says that the — that the school districts, the school system will be under the exclusive control of the State, period. But where does it say it has to be? On the reservation. Or on Indian land in the reservation. Well, because if we don't do that, they've sued us to say you have to put schools in a close proximity to the children. Otherwise, it's — you're violating your constitutional obligation, your Federal Enabling Act and constitutional obligation to — But maybe in this instance, there's a lot of other land that would be available. Or maybe just off the reservation would be really easy for people to get to. Maybe it isn't the same facts. So isn't that — isn't there — that's — the plausible is a pretty darn low standard. That's — You've mentioned this case two or three times, but you haven't given us a citation and you haven't told us what the outcome was of them suing you, of the tribe suing you for not providing uniform access to the kids. I don't recall the name of it. That seems like a really salient point. Do you recall the outcome of the case or did they just — they filed suit? Just that they filed suit saying you have to provide it for us. Well, we don't know if it was adjudicated? It was — I'll have to — if I can file a supplemental — Sure. So I'm just — Citation of authority. I'm not trying to be difficult, but it — okay. Yeah, I'll have to do that for you. I'm sorry. We're all — if we're talking about — let me go back. Could I ask you a question about the Eighth Circuit cases? So you relied in your brief on Belcourt and Fort Yates. There are footnotes in both those cases that say, to be clear, we are not ruling out the possibility that a state and a tribe could enter into an agreement that confers jurisdiction upon the tribe, such as an agreement that expressly provides for jurisdiction. Don't those footnotes say that there could be an agreement, maybe a lease, that would give jurisdiction? And so those — I read those footnotes as saying that we actually wouldn't even be creating a split if we say, you know, maybe there's jurisdiction here, maybe these leases provided for jurisdiction. No. What the leases say — first of all, counsel is correct. We are not the state. We cannot enter into a state-tribal agreement. The state can do that. We are just a political subdivision. Our authority is limited by Arizona law. We can only have the power to do what Arizona allows us to do. Entering into a lease is one of them. Agreeing to jurisdiction to state over the state public school system is not. It's not in there. And so I disagree. So, okay. I didn't see that in your brief. So they were arguing that there is a different state law, Kansas or whatever state it was, there was a different state law in these other cases that limited the districts. I don't remember seeing in your brief the idea that you were so limited. Yes. It's in our brief. We cited the Arizona state statutes that said we are limited, we have only the authority allowed us by our legislature. And entering into a state Navajo tribe compact or agreement isn't one of them. But you entered a lease. So the lease itself could be an agreement pursuant to which you have this lease and it's governed by Navajo law and Navajo jurisdiction, right? I mean, don't — it's at least a question whether a lease could do that. No, I don't think so. Why not? Because the lease says we will abide by Navajo law, not that we will be subject to — Okay. Well, you might have an issue about whether this lease actually did. But is there any reason why a lease couldn't? What if the lease had said, by signing this lease, we agree to Navajo jurisdiction? Well, this lease also says, but we are not doing anything that's inconsistent. No, no, no. Hypothetical, hypothetical. The school district couldn't do that. But such an agreement has to be with the State, not with a political subdivision. The State has to agree with the Navajos to abide by or to have the public school be subject to tribal jurisdiction. Right now, our constitutional mandate is we are subject to exclusive control. The schools are subject to State exclusive control. So then why isn't that — all of these things, it's a little — I'm feeling a little bit like when I'm deciding whether a summer judgment should be upheld, and then I keep explaining why something is not a material fact, I keep hearing so many arguments here that, so why isn't it plausible? Why don't they decide? That's a very low standard. You may be making very good arguments about why you win, why there is not tribal, but I'm still hearing two sides that are making some sense. Well, let me put it this way. I mean, neither side has really given me anything so definitive that the answer is there. And so if it's plausible, then they get the first stab at it. Well, no case has ever found tribal jurisdiction plausible where the State political subdivision is conducting State or State or — Except National Farmers said you've got to go there first. Well, let me tell you about — And that was a school district. But what happened in Farmers, it's a little — it's different because —  It's different than their spin, but still — No, but let me explain. The issue in National Farmers was not whether jurisdiction was plausible. It was whether the district court had federal question jurisdiction to even decide the jurisdictional issue. The court held, yes, you do have federal question jurisdiction to decide this issue, and by the way, there should be exhaustion, and here are the exceptions. They weren't — they didn't have a chance yet to argue this exception applies, this exception applies, this exception applies. That had to be after — But if there should be exhaustion, doesn't that implicitly say that there's a plausible claim? Not in — If there's no need to exhaust, then you can go right to federal court. The whole idea for exhaustion is because there's a plausible tribal jurisdiction. Right. But there's no case that has said that there was plausible jurisdiction. I mean, they didn't even argue those exceptions in Crow. I mean, okay, so are you saying that that was dicta from the Supreme Court? I mean, it was the Supreme Court saying that this exact type of situation, as a person suing a tribe, has to exhaust first in tribal court. Not — I take exception to the exact situation. Which case are we talking about that we're describing as an exact situation that involved a political subdivision? National Farmers Union. The school district — We're talking about the Crow case. National Farmers Union v. Crow. The one that — Is it your representation that that's the exact fact pattern that we have here? No. That was Judge Friedman's — So what is the difference? So, I'm sorry. Go right ahead. So I think that our exact — as close as we can get, there's nothing that's exact yet. But Nevada v. Hicks — No, no, no. Why do you think that National Farmers Union is not an equivalent situation if someone's suing a school district? It is someone suing a school district, but the issue there was not whether jurisdiction was plausible. It was whether the district court had Federal question jurisdiction. But the Supreme Court said this killing needs to be exhausted in tribal court. So maybe you're saying that wasn't really at issue, so that means it's dicta? Is that what you're saying? Well, right. And it said there has to be exhaustion unless you have these exceptions. And they didn't have a chance to even argue yet whether the exceptions applied. What exceptions are you talking about? National, whether there is — you know, whether the jurisdiction is to harass or whether the other three exceptions — But the exceptions they list aren't the ones that anyone's claiming are at issue here, are they? Right. It's the straight, the added fourth exception that applies here, which makes this case like Nevada v. Hicks. I mean, can I say one thing about Nevada v. Hicks? The council has said that it's a very narrow situation and limited only to a state officer serving a warrant on the reservation. Why would there be only an exception for a state officer serving a warrant on a Navajo nation? Why isn't it — But you're saying, thus, that Waterwheel is wrongly decided? Let me — I think Waterwheel came out the right way, but I think the analysis was incorrect. But I think it came out the right way because it was a private entity using Navajo land for its own benefit and not paying rent, and then the Navajos had the right to evict. They were trying to evict. There's no eviction here. Okay. So it seems like you're saying Waterwheel was wrong — the reasoning of Waterwheel is wrong. Yeah. Aren't we as a panel bound by the reasoning of Waterwheel? You can be bound by the reasoning of Waterwheel and still affirm because the situation was so different. You have the private individual who was trying to benefit off the Navajo land to his own benefit without paying. This is directly relating to the Navajo management of their own land. We're not — our employment decisions are not directly related to the Navajo management of their own land or internal relations. What was the competing state interest in Waterwheel? There isn't one. Right. It's a very different case, isn't it? It's a completely different case. So you can follow Waterwheel as I think it was wrongly analyzed, but that doesn't matter. I would still come out the same way. It seems to me a much easier case. Waterwheel's a much easier case. This one's really sticky, and I'm not sure that any of us have the right answer on this yet. I don't mean to suggest that, but this is a very different animal. It is a completely different animal, and it's much more like Nevada versus Hicks than Waterwheel or any other case. So I think that's a really good argument, right? We could say this is different than Waterwheel, it's more like Nevada v. Hicks, the state interest is stronger. But is there any case that you can point to that has decided that issue? I mean, it seems to me we're facing a novel question. Are we more like Waterwheel or are we more like Hicks? And in that situation, isn't that a plausible question? And then it's a plausible question, and that's the only standard we have to meet here. It's not plausible because the only cases holding that exhaustion was required involved private nonmembers where it wasn't clear where the conduct occurred. I don't see how, though, you say that National Farmers does not, that that was with the school district. And they had to go back to exhaust. I think National Farmers is a very tough case for you, and I think Judge Callahan's question is very well taken. Is the problem that it's so old and it predates these other cases? Where do you put it? They didn't decide that any of the exceptions, they didn't even address whether the exceptions applied in that case. Can you go back? Are any of the exceptions that they said hadn't been reached yet relevant here? I'm sorry, are you asking? There are a bunch of exceptions for why you wouldn't have to exhaust. I think, if I'm remembering right, the ones that they identify as perhaps at issue in National Farmers are not any exceptions anyone is talking about here. Right, that's correct. That's correct. And they didn't even address whether those exceptions applied yet, because the Court had just created those exceptions in that case. But the idea that were reserved, that National Farmers Union said you had to exhaust except for the possibility of certain exceptions, and none of those exceptions apply here, I don't understand how that gets you to National Farmers Union is not binding here, or at least not plausible. I mean, we don't even have to say it's binding. Just there's a plausible argument that it's relevant here. There's a plausible argument that it's relevant, but it predates Nevada v. Hicks, and it predates every other case in the country that held exhaustion was not required. Have any other Supreme Court cases specifically overruled National Farmers? No, not that I know of. So I'm not going to be so ostentatious to say that we on the Ninth Circuit can overrule National Farmers. No, of course not. But in Nevada v. Hicks, Montana v. King, and Fort Yates v. Murphy, they all found that exhaustion was not required because jurisdiction was not plausible, and those are cases involving State governmental interests on the reservation. Can you point us to the Arizona law that would prevent you from entering a lease that says you're agreeing to tribal jurisdiction? It's in the ARS 15, but I will have to, again, do a supplemental citation of authority for you. Counsel, what about Dolgen? I don't know if I'm pronouncing it correctly. Dolgen Corp, Dolgen Corp, the recently granted cert petition out of the Fifth Circuit. Are you familiar with that case? I recognize the name of it, but I'm not coming up with the facts of that case right now. All right. That's fine. If you're not prepared to talk about it, that's fine. Thank you. I guess I'm not sure where I should go from here, whether you're interested in hearing about the treaty or you're interested in hearing about water wheel or exhaustion, but the treaty does not require reversal here. The treaty has been interpreted many times, starting with Williams v. Lee, to say that what it allows is for the tribes to continue doing their internal government, internal relations, they can continue managing their lands, and internal things like domestic relations, inheritance, and things like that. This is not that case. The treaty doesn't apply. Water wheel we've already talked about. The four quick points about exhaustion. First, several cases have found exhaustion unnecessary with records just like ours, with no factual finding. Three cases are right from the Ninth Circuit. Evans v. Shoshone-Bannock land use policy, BNSF Railway v. Ray, and State v. King, State of Montana v. King. They all found exhaustion not necessary. Okay. I think you should wrap it up because you've actually gone over, but we've had a lot of questions. Oh, I'm so sorry. I thought I had all this time left. I know. I know. That's not fair. I apologize. It goes down. You would have had to answer the questions anyway. I apologize. No, it's not your fault. I just ask you to affirm. Thank you. Thank you. All right. Since we've had a lot of questions at the other side, I'll give you an extra minute there to add on. Thank you. Okay. Well, are we ready? That what? It's all right. We'll go. You can go up. When it starts counting up, you can go an extra minute. I'll ask you when to be quiet. Okay. Thank you. Well, I think it's been demonstrated by all the questions and the presentations. This is a very complicated case. It's not foreclosed by any existing precedent, which has always been the point the Navajo Nation has been making. Should we wait for the Supreme Court to rule on the cert petition that it recently granted? You're talking about the Dollar General case, the Dolgan court. That's from the Fifth Circuit. That case, all tribal court remedies had been exhausted. There was no actual factual issues that they had to resolve, and it has to do with Montana and those exceptions dealing with the employee. I have it here. I don't want to take up your time. I'm just wondering if your position is that we don't need to wait for it. I don't believe so. I think because this is an exhaustion case. If, in fact, it goes back and that case is actually issued, of course, that can be part of the analysis by the tribal tribunal on appropriate exhaustion. That case will only be about the Montana exceptions, in your understanding? It's unclear. I mean, it's the U.S. Supreme Court, so it could go a number of different ways. It is on tribal trust land in the Mississippi Choctaw. There is a lease that appears, from my understanding of the facts, the lease doesn't have the broad consent that we have in Winder Rock. So whether certain parts of this case would be determined, a lot of this case would be determined, a very narrow, it's unclear. So your point is if it ends up being spot on, then the tribal court would be bound by it and have to incorporate it into whether there was jurisdiction I think there are certain factual differences. There's not a treaty right to exclude, which is being asserted in that particular case. I don't believe the Mississippi Choctaws have a similar equivalent treaty right that we're asserting here in the Navajo Nation. And there are other issues dealing that it is a state school district and such things that might distinguish it. But I don't think that the possibility it could affect some parts of this case mean hold on to it, because I believe the tribal tribunal, upon proper exhaustion, can incorporate that into its analysis when appropriate. So just one or two minor points that were discussed. There is nothing in Arizona law, at least that we are aware of, the equivalent of North Dakota, about you cannot expand the jurisdiction. And anyway, the Winder Rock Unified School District leases say that they consent to jurisdiction. So the question is if it is in fact true they could not do that, what were they doing negotiating that jurisdictional provision?  But that was consideration for the Navajo Nation allowing this school district. In reality, they do not pay rent under those leases. Do we have that in the record? The leases are in the record, in the excerpt of record. And they provide that there's no rent paid? Right. There's no provision for rent. Okay. Does that matter? Sorry. Does that matter or are you just responding to opposing counsel's comment that she wasn't sure one way or another? Well, that and also I think it sets this consent provision in the context of what the nation was negotiating, because it wasn't a monetary issue, but there are certain jurisdictional conditions that particularly for the Winder Rock Lease. You're saying the jurisdictional jurisdictions are the consideration. It wasn't money that was a consideration. Yes, ma'am. That's what I'm suggesting. Isn't that sort of problematic? That's exactly the problem I have with this case about it being qualitatively different because it wasn't an arm's length commercial transaction as we had in some of these other cases like Waterville where there's an amusement park or the Skywalk or whatnot. But it was an arm's length transaction as to using tribal trust land, and we've discussed numerous times at this argument. They didn't have to use our particular tribal trust land to do it. We don't really know that. You've made that representation, but I don't have a good working knowledge of that, so I don't know what it would mean if they were to only have to place their schools on non-tribal trust land, whether that means that children would have to be bused a long distance. I just don't think we have any of that in the record, do we? Which would suggest that it needs to go back to the tribal tribunal if that's a relevant issue. Well, that's why I asked you earlier about what kind of factual discovery needed to be done, and you listed off some things that sounded, to Judge Friedland, at least, and to me, a lot like legal issues. So can you help me out with what factual discovery needs to be done? That would be helpful. I think the history of how these school districts actually came onto the reservation where they accommodation schools for non-Indian employees and then sort of developed into how Navajos became the governing board and are they, in fact, the governing board and what decisions do they make. Those are factual issues. I think the demographics of the school districts because, in reality, from our perspective, these are Navajos making decisions almost exclusively about Navajos on Navajo land pursuant to a consent to Navajo jurisdiction. That's how we think. It seems like one of the questions, though, might be this question of a map of the reservation and where is the non-Indian land and could there be schools there and what would the rent be, and those kind of questions seem factual and it seems like from this discussion those may be important, right? I mean, I think it goes into the mandate because the lower court and the You can't exclude us. We have a mandate. We have to be here. But I think the implication, I think that's what you're suggesting, knock down the tribal council building then if you need to. Put up a school. We can't exclude you. Just pick Canyon to Shea, any place you want to put a school. Their argument is there's a broad categorical rule. We can't do anything about it. That can't possibly be true. You also made the representation that the Navajo Nation sued the school district earlier and we don't have the case name or the outcome of the case. Can you help us out with that? I think what Ms. Gilbride is referring to is a Utah situation dealing with Navajo Mountain, which is an extremely remote community in southern Utah on the Navajo Reservation. As I recall that case, and it is cited in Ms. Gilbride's brief, I believe, that was a very specific circumstance and the district court never made a merits decision on exactly whether indeed it is a mandate in this circumstance. As I recall the case, it's a long decision that kind of wandered around on exactly these issues we're talking about. What's the relationship between the tribe, the federal government, and the state when it comes to providing education? And what happened? They basically said we're not going to make a definitive decision. Go back and come up with some sort of arrangement, as I recall. Now, that's as I recall. You have the citation in Ms. Gilbride's brief. But as I recall, they didn't make any definitive decisions on is this indeed consistent with your mandate under an equivalent Utah provision. They came in very similar under their enabling act. But the position here is we can still exclude you. We can condition your use of our land based upon following our law, even if you do have a mandate. But the point of it is all of these are extremely complicated, complex issues that none of us have been able to resolve. Therefore, it's plausible and needs to go back. Thank you. All right, thank you both for your argument in this matter. It was helpful. The matter will stand submitted. The last two matters on calendar, Terry Meyer v. Eric Shinseki, 13-16264 was submitted on the briefs, will be submitted as of this date. Denna Rasho Hasso v. Carolyn Colvin, 13-16268 has been submitted on the briefs and will be submitted as of this date. Court is in recess.
judges: Callahan, Christen, Friedland